FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2012 APR 23 P 4:14

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| NATIONAL HERITAGE FOUNDATION, INC.<br>6201 Leesburg Pike<br>Suite 405<br>Falls Church, VA 22044<br><br>*Plaintiff,*<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY<br>SERVE: CT Corporation System,<br>Registered Agent<br>116 Pine Street, Suite 320<br>Harrisburg, PA 17101<br><br>*Defendant.* | Case No. 1:12 cv 447<br>TSE/IDD<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff National Heritage Foundation ("NHF"), by its undersigned counsel, files this complaint against Defendant Philadelphia Indemnity Insurance Company ("PIIC" or "Defendant") and, in support thereof, alleges as follows:

### The Parties

1.     NHF is a non-profit Georgia corporation with its principal place of business in Falls Church, Virginia.

2.     NHF was the Debtor in a Chapter 11 proceeding filed on January 24, 2009 in the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division) (the "Bankruptcy Court"), Case No. 09-10525 (SSM) (the "Bankruptcy Case").

4811-3865-0127.3

3.      PIIC is an insurance company incorporated under the laws of Pennsylvania, with its principal place of business located in Bala Cynwyd, Pennsylvania.

4.      PIIC actively and substantially conducts business within the Commonwealth of Virginia and within this judicial district.

## Jurisdiction and Venue

5.      Jurisdiction is proper pursuant to 28 USC §1332 in that the action is between citizens of different States and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.      Venue is proper pursuant to 28 USC § 1391(a)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## Facts

7.      NHF and PIIC entered into a relationship as early as 2005, whereby NHF bought and paid for insurance liability policies from PIIC over the course of at least four years.

8.      NHF is the "Named Insured" in a liability policy issued by PIIC entitled "Flexi Plus Five – Not-For-Profit Organization Directors & Officers Liability Insurance," Policy No. PHSD355980, (the "Policy"). A copy of the Policy is attached hereto as **Exhibit A**.

9.      The Policy is a claims-made policy that designates the policy period as September 1, 2008 to September 1, 2009.

10.      The promises made by PIIC in the Policy included its promises to:

C.      pay on behalf of the Organization, Loss from Claims made against the Organization during the Policy Period, and reported to the Underwriter pursuant to the terms of this Policy, for a D&O Wrongful Act.

11.      "Claim" is defined by the Policy as "(1) any written demand for monetary or non-monetary relief; (2) any judicial [or] civil proceeding ... which subjects an Insured to a binding

2

adjudication of liability for monetary or non-monetary relief for a Wrongful Act; or (3) any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against an Insured."

12.     "Wrongful Act" is defined by the Policy to include a "D&O Wrongful Act," which in turn is defined to include any "act, error omission, misstatement, misleading statement, neglect [or] breach of duty ... by the Organization."

13.     "Loss" is defined by the Policy to include "Damages" and "Defense Costs."

14.     "Damage" is defined as "a monetary judgement [sic], award or settlement."

15.     "Defense Costs" are defined in the Policy to include "any reasonable and necessary legal fees and expenses incurred in the defense of a Claim."

16.     The Policy requires PIIC to "advance" such defense costs "prior to the disposition of a Claim."

17.     The Policy contains a $50,000 Retention for each Claim.  However, the Policy provides that "[a] single Retention shall apply to Loss arising from all Claims alleging Interrelated Wrongful Acts."

18.     The Policy defines "Interrelated Wrongful Acts" as "any causally connected Wrongful Act or any series of the same, similar or related Wrongful Acts."

19.     The claims identified in Parts A-D, as more fully set forth in paragraphs 22 to 131, below are Interrelated Wrongful Acts.

20.     The Policy includes an "Extended Reporting Period Endorsement," which provides an Extended Reporting Period from September 1, 2009 to September 1, 2012.

21.     NHF paid all premiums for the Policy and satisfied all conditions thereunder.

3

4811-3865-0127.3

A.     **The Highbourne/Behrmann Claim**

22.     On or about May 26, 2009, the Highbourne Foundation ("Highbourne") and its founders, John and Nancy Behrmann (the "Behrmanns"), filed a Proof of Claim (Claim No. 142-1) in the Bankruptcy Case in the amount of $626,332.50 (the "Highbourne Claim").

23.     On or about August 2, 2009, NHF filed an Objection to the Highbourne Claim.

24.     By letter dated June 26, 2009 (the "June 26, 2009 Letter"), NHF provided PIIC with notice of many of the proofs of claim filed in this proceeding, including the Highbourne Claim and the Townsley Claim (as hereafter defined).

25.     By letter dated August 20, 2009, PIIC acknowledged receipt of the June 26, 2009 letter.

26.     On or about August 31, 2009, Highbourne and the Behrmanns filed a Response to NHF's Objection (the "Highbourne Response").

27.     The Highbourne Response stated that the claimants were entitled to "payment" from NHF because NHF "induced" the Behrmanns to establish Highbourne and make donations to NHF by:

> (a) publishing to the Behrmanns ... numerous material misrepresentations, commitments and statements of alleged fact that were false, and (b) consciously omitting to advise the Behrmanns in respect of crucial material facts that in equity and good conscience should have been disclosed so as to make the matters that were represented to the Behrmanns not materially misleading.

28.     On or about September 1, 2009, Highbourne and the Behrmanns filed an amended Proof of Claim (Claim No. 142-2) which incorporated the Response by reference, changed the name of the claimant to the Behrmanns, and increased the claim amount to $643,396.05 (the "Amended Highbourne Claim").

4

29.     By letter dated October 9, 2009 (the "October 9, 2009 Letter"), NHF provided PIIC with its objection to the Proof of Claim and the Amended Proof of Claim (inclusive of the Response incorporated therein).

30.     In the October 9, 2009 Letter, NHF requested confirmation that PIIC would advance Defense Costs incurred in responding to, among other things, the Amended Highbourne Claim.

31.     By letter dated November 6, 2009 (the "November 6, 2009 Letter"), NHF provided PIIC with additional information relating to, among other things, the Amended Highbourne Claim and again requested that PIIC confirm that it would advance Defense Costs.

32.     From November 6, 2009 to February 25, 2010, NHF received no communication from PIIC.

33.     On February 25, 2010, NHF sent a letter to PIIC (the "February 25, 2010 Letter"), attaching, among other things, additional information about the Amended Highbourne claim and invoices for work performed through January 2010 by its counsel in connection with its defense of the Amended Highbourne Claim (among others).

34.     In the February 25, 2010 Letter, NHF again demanded that PIIC advance its Defense Costs.

35.     PIIC failed to respond to the February 25, 2010 Letter.

36.     On March 2, 2010, NHF's counsel telephoned PIIC's counsel to discuss (a) PIIC's failure to respond to NHF's repeated requests for advancement of Defense Costs as required under the Policy; and (b) PIIC's failure to timely evaluate the various claims for which NHF was seeking coverage.

4811-3865-0127.3

37.     During the March 2, 2010 conversation, PIIC's counsel indicated that to evaluate any claims, including a decision on whether to advance Defense Costs, PIIC needed "additional information" about each claim for which NHF was seeking coverage.

38.     The additional information requested by PIIC was NHF's "donor file," which contained all of the communications between NHF and its donors and all of NHF's documentation regarding the establishment and maintenance of each such claim.

39.     NHF provided the information PIIC requested.

40.     By letter dated March 3, 2010, NHF forwarded to PIIC a disk containing documents from NHF's Highbourne files as well as all documents produced by Highbourne and the Behrmanns in discovery.

41.     By letter dated March 5, 2010, NHF also provided PIIC with invoices for work performed by its counsel through January 2010 in connection with its defense of the Amended Highbourne Claim (among others) and reiterated its demand that PIIC advance its Defense Costs required under the Policy.

42.     By letter dated March 16, 2010, PIIC's counsel acknowledged receipt of the information and documents provided by NHF with its March 3 letter and stated that because the documentation was "extensive," that it would "take some time for them to be reviewed … so that coverage … and any obligations to reimburse defense expenditures, may more definitively be determined."

43.     By letter dated April 9, 2010 ("April 9, 2010 Letter"), NHF provided PIIC with responses to certain questions raised in PIIC's March 16 letter.

44.     The April 9, 2010 Letter also included invoices for work performed by its counsel in February 2010 in connection with its defense of the Amended Highbourne Claim (among others) and again reiterated its demand that PIIC advance its Defense Costs.

45.     From March 16, 2010 to April 27, 2010, PIIC failed to communicate with NHF.

46.     By letter dated April 27, 2010 (the "April 27, 2010 Letter"), NHF again notified PIIC that trial was scheduled for May 10, 2010 on the Amended Highbourne Claim.

47.     The April 27, 2010 Letter also provided PIIC with invoices for work performed by its counsel in March 2010 in connection with its defense of the Amended Highbourne Claim (among others) and again demanded that PIIC advance its Defense Costs.

48.     Also on April 27, 2010, NHF's counsel followed up with a telephone call to PIIC's counsel.

49.     During the April 27, 2010 telephone conference between counsel for PIIC and counsel for NHF, PIIC's counsel again stated it would be at least thirty days before a position regarding coverage was provided by PIIC.

50.     On April 28, 2010, NHF informed PIIC that if PIIC did not provide a coverage position by 5:30 pm on April 30, 2010 and agree to advance Defense Costs, NHF would consider PIIC's inaction to constitute a denial of coverage, and would proceed as if uninsured.

51.     PIIC failed to provide NHF with a coverage position by April 30, 2010.

52.     Despite being in possession of Highbourne's Amended Proof of Claim for more than ten (10) months prior to the trial date, PIIC never provided NHF with a coverage position for that claim.

53.     The Amended Highbourne Claim is a Claim under the Policy for a D&O Wrongful Act.

7

4811-3865-0127.3

54.     PIIC had a duty to advance to NHF Defense Costs prior to disposition of the Amended Highbourne claim.

55.     Despite being in possession of the Amended Highbourne Claim for more than two (2) years, PIIC has never provided NHF with a coverage position for the Amended Highbourne Claim.

56.     Despite being in possession of the Amended Highbourne Claim for more than two (2) years, PIIC has never advanced Defense Costs NHF incurred in connection with the Amended Highbourne Claim.

57.     Without having a position on coverage by PIIC and PIIC failing to advance Defense Costs as required under the Policy, NHF determined that it was in its best interests to settle the Amended Highbourne Claim.

58.     By letter dated May 4, 2010, NHF informed PIIC that it would engage in settlement negotiations.

59.     The settlement negotiations were successful and a reasonable settlement was presented to NHF.

60.     By e-mail dated May 5, 2010 (the "May 5, 2010 E-mail"), NHF informed PIIC of its intent to settle the Amended Highbourne Claim for $590,000 (an amount that was now more than $100,000 less than what was previously discussed with the Behrmanns in prior settlement negotiations but was rejected by the Behrmanns).

61.     In the May 5, 2010 E-mail, NHF requested that PIIC advise NHF by 9:30 am on May 6, 2010 if PIIC consented to the settlement.

62.     PIIC did not respond to the May 5, 2010 E-mail.

8

63.     NHF proceeded to resolve the Amended Highbourne Claim (the "Highbourne Settlement").

64.     In conjunction with the Amended Highbourne Claim, NHF has incurred Defense Costs.

65.     NHF found these Defense Costs reasonable and has paid these amounts to its attorneys.

66.     PIIC was contractually obligated to advance NHF's Highbourne-related Defense Costs and to fund the Highbourne Settlement.

67.     By its abandonment of NHF, PIIC repudiated its contractual duties to contemporaneously pay the costs incurred by NHF in its own defense and to fund the Highbourne Settlement.

**B.     The Townsley Claim**

68.     On or about June 2, 2009, Maurice Townsley ("Townsley") filed a Proof of Claim (Claim No. 240-1) in the amount of $1,200,000 (the "Townsley Claim").

69.     In the June 26, 2009 Letter, NHF provided PIIC with additional notice under the Policy, which included the Townsley Claim and provided a copy of the Townsley Claim.

70.     On or about August 2, 2009, NHF filed its Objection to the Townsley Claim.

71.     By letter to the Bankruptcy Court dated September 2, 2009, Townsley identified the basis for his claim, including that one of NHF's directors made certain misrepresentations to Townsley that were false and/or misleading.

72.     In the October 9, 2009 Letter, NHF provided PIIC with Townsley's letter to the Bankruptcy Court.

73.     On or about October 30, 2009, Townsley filed written responses to NHF's discovery requests (the "Townsley Responses").

74.     In the Townsley Responses, Townsley identified the legal theories that Townsley claimed to provide the basis for his claim, including "negligent misrepresentation and omission," and "breaches of fiduciary duties."

75.     In the November 6, 2009 Letter, NHF provided PIIC with the Townsley Responses.

76.     In each of its February 25, 2010, March 3, 2010, April 9, 2010 and April 27, 2010 letters to PIIC's counsel referenced above, NHF requested that PIIC pay to NHF its Defense Costs incurred in connection with the Townsley Claim.

77.     On or about January 28, 2010, NHF settled the Townsley Claim ("Townsley Settlement") for $929,491.94.

78.     The Townsley Claim was a Claim under the Policy for a D&O Wrongful Act.

79.     PIIC never provided NHF with a coverage position on the Townsley Claim.

80.     PIIC never advanced Defense Costs NHF incurred in connection with the Townsley Claim.

81.     In conjunction with the Townsley Claim, NHF has incurred Defense Costs.

82.     NHF found these Defense Costs reasonable and has paid these amounts to its attorneys.

83.     PIIC was contractually obligated to advance NHF's Townsley-related Defense Costs and to fund the Townsley Settlement.

10

4811-3865-0127.3

84.     By its abandonment of NHF, PIIC repudiated its contractual duties to contemporaneously pay the costs incurred by NHF in its own defense and to fund the Townsley Settlement.

**C.      The Motion to Stay and Plan Appeal Claims**

85.     On September 8, 2009, in conjunction with the Bankruptcy Case, the Behrmanns and the Highbourne Foundation filed an "Objection to Confirmation of Chapter 11 Plan" ("Behrmann Objection") to NHF's Plan of Reorganization (the "Plan").

86.     On October 6, 2009, Anderson and Townsley joined in the Behrmann Objection.

87.     The Behrmanns (together with Anderson and Townsley) primarily objected to the Plan because of its inclusion of release and injunctions provided to NHF's directors and officers, as the parties assert they have direct claims against NHF's directors and officers.

88.     The Plan provides a defense to the claims asserted against NHF's directors and officers.

89.     On October 16, 2009, the Bankruptcy Court confirmed NHF's Fourth Amended and Restated Plan of Reorganization of the Debtor ("Plan Confirmation Order").

90.     On November 13, 2009, the Berhmanns, Anderson, and Townsely (the "Initial Objecting Parties")[1] filed a Motion for Stay Pending Appeal with the Bankruptcy Court ("Bankruptcy Court Stay Motion").

91.     On November 20, 2009, NHF filed an Objection to Motion for Stay Pending Appeal ("Bankruptcy Court Stay Objection").

92.     On December 16, 2009, the Bankruptcy Court entered an Order ("Bankruptcy Court Stay Order") which stayed a portion of the Plan Confirmation Order.

---

[1] As part of the settlement referenced in Paragraph 77, Townsley released, among other rights, his right to object in any way to the Plan Confirmation Order.

11

93.     The Bankruptcy Court Stay Order granted the Objecting Parties a limited stay "pending the decision of the United States District Court for the Eastern District of Virginia on the appeal taken by the movants, as would bar the movants from commencing – **solely in order to toll the running of the statute of limitations** – a civil action against any of the officers, directors, or employees in a court of appropriate jurisdiction for causes of action arising out of payments made by the movants to the debtor; however, no summons shall issue against such defendants." (emphasis added).

94.     On January 13, 2010, the Initial Objecting Parties filed a Notice of Appeal of the Plan Confirmation Order in the District Court.

95.     On January 22, 2010, the Behrmanns and Anderson ("Objecting Parties") filed a Complaint in the District Court ("Directors and Officers Complaint") against John T. Houk, II, Miriam M. Houk, John T. Houk III, Janet H. Ridgely, and Julie L. Houk (the "NHF Defendants"), directors and officers of NHF.[2]

96.     The Directors and Officers Complaint alleged that the NHF Defendants breached their fiduciary duty to NHF by, among other things, "failing to appropriately, timely, fairly and comprehensively publish to Plaintiffs the substantial risks and dangers of initiating and continuing charitable giving plans, programs and strategies through NHF." Directors and Officers Complaint at ¶ 45.

97.     Pursuant to the Bankruptcy Court Stay Order, the Directors and Officers Complaint was never served on any of the NHF Defendants.

---

[2] The Directors and Officers Complaint named Miriam M. Houk as a party. Miriam M. Houk is neither a director nor officer of NHF; however, Marian Houk is a director and officer of NHF. NHF believes this was simply a typo by the drafters of the Directors and Officers Complaint and that Marian Houk was one of the intended defendants to that litigation.

98.     In the February 25, 2010 Letter, NHF provided additional notice to PIIC including notice of the Bankruptcy Court Stay Order and the filing of the Directors and Officers Complaint.

99.     In the February 25, 2010 Letter, NHF included a copy of the Bankruptcy Court Stay Motion, the Bankruptcy Court Stay Objection, the Bankruptcy Court Stay Order, and the Directors and Officers Complaint.

100.     On August 17, 2010, the District Court entered an order affirming the Bankruptcy Court's entry of the Plan Confirmation Order.

101.     By its own terms, the Bankruptcy Court Stay Order expired on September 1, 2010, after the District Court affirmed the Plan Confirmation Order and the applicable fourteen (14) day tolling period had passed.

102.     On September 3, 2010, the Objecting Parties filed a Notice of Appeal with the Fourth Circuit appealing the District Court's decision regarding the Plan Confirmation Order.

103.     After the expiration of the Bankruptcy Court Stay Order, the Objecting Parties filed further motions to stay with the Bankruptcy Court, the District Court, and the Fourth Circuit Court of Appeals, all of which were denied.

104.     On December 9, 2011, the Fourth Circuit issued an opinion that vacated the judgment of the District Court regarding the Plan Confirmation Order and, ultimately, remanded the case to the Bankruptcy Court to allow the Bankruptcy Court to set forth specific factual findings supporting its conclusions in the Plan Confirmation Order.

105.     The Bankruptcy Court Stay Order, District Court Motion for Stay, including the related appeals, and the Directors and Officers Complaint are a Claim under the Policy for a

D&O Wrongful Act ("Motion to Stay Claim").  In addition, the Objection, including the related appeals, are a Claim under the Policy for a D& O Wrongful Act (the "Plan Appeal Claim").

106.    The Motion to Stay Claim and the Plan Appeal Claim are claims under the Policy for a D&O Wrongful Act.

107.    NHF has incurred Defense Costs relating to the Motion to Stay Claim and the Plan Appeal Claim.

108.    NHF has found these Defense Costs reasonable and has paid these amounts to its attorneys.

109.    PIIC was contractually obligated to advance these Defense Costs to NHF.

110.    NHF continues to incur legal fees and costs in connection with the Plan Appeal Claim incurred in defending these matters.

111.    By its abandonment of NHF, PIIC repudiated its contractual duties to contemporaneously pay the costs incurred by NHF in its own defense.

**D.    The Anderson Claim**

112.    On or about October 6, 2009, Delores F. Anderson ("Anderson") filed a Proof of Claim (Claim No. 341-1) in the Bankruptcy Case in the amount of $1,010,796.27 (the "Anderson Claim").

113.    On the same date, Anderson filed a Motion for Leave to File Proof of Claim Out of Time (the "Motion for Leave").

114.    In the Motion for Leave, Anderson explained the basis for her claim, including the allegation that NHF "omitted to fully, fairly and timely inform Anderson that the Debtor engaged in imprudent business and investment practices, and that it published financial

14

statements that were false and/or misleading." Anderson further stated that NHF made "materially false misrepresentations and omissions."

115.    In the October 9, 2009 Letter, NHF provided PIIC with additional notice, including notice of the Anderson Claim and provided a copy of that Claim, along with Anderson's Motion for Leave.

116.    On or about October 15, 2009, NHF filed its Objection to the Anderson Proof of Claim.

117.    On or about November 5, 2009, Anderson filed written responses to NHF's discovery requests ("Anderson Responses"). The Anderson Responses identified the legal theories that Anderson claimed to provide the basis for her claim, including "negligent misrepresentation and omission," and "breaches of fiduciary duties."

118.    In its November 6, 2009 letter to PIIC's counsel, NHF provided PIIC with Anderson's written discovery responses.

119.    On or about November 19, 2009, the Bankruptcy Court issued an Order in the Bankruptcy Case denying Anderson's Motion for Leave and disallowing the Anderson Claim.

120.    On or about November 27, 2009, Anderson filed a Notice of Appeal of that Order with the United States District Court of the Eastern District of Virginia ("District Court").

121.    By letter dated March 5, 2010, NHF forwarded to PIIC a disk containing documents from its Anderson files.

122.    In each of its February 25, 2010, March 3, 2010, April 9, 2010 and April 27, 2010 letters to PIIC's counsel referenced above, NHF requested that PIIC advance to NHF its Defense Costs incurred in connection with the Anderson Claim.

123.    Despite being in possession of the Anderson Claim for more than two (2) years, PIIC has never provided NHF with a coverage position for the Anderson Claim.

124.    Despite being in possession of the Anderson Claim for more than two (2) years, PIIC has never advanced Defense Costs to NHF for the legal fees and costs it has incurred in connection with the Anderson Claim.

125.    The Anderson Claim is a Claim under the Policy for a D&O Wrongful Act.

126.    In conjunction with the Anderson Claim, NHF has incurred Defense Costs.

127.    NHF found these Defense Costs reasonable and has paid these amounts to its attorneys.

128.    PIIC was contractually obligated to advance NHF's Anderson-related Defense Costs.

129.    By its abandonment of NHF, PIIC repudiated its contractual duties to contemporaneously pay the costs incurred by NHF in its own defense.


## CAUSE OF ACTION:
### Breach of Contract

130.    NHF re-alleges and incorporates by reference all prior allegations contained herein.

131.    NHF has substantially performed all material obligations on its part to be performed under the Policy.

132.    PIIC has repudiated its duty to advance Defense Costs incurred by NHF under the Policy.

133.    PIIC has repudiated its duty to indemnify NHF for the Highbourne Settlement and the Townsley Settlement.

4811-3865-0127.3

134.    As a proximate result of PIIC's breach, NHF has suffered damages in an amount not less than **$3,030,299,** less the $50,000 Policy Retention, to be determined at trial.

## JURY DEMAND

NHF demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

For the foregoing reasons, NHF requests that the Court:

a.    award to NHF its actual damages in an amount to be determined by the trier of fact, in excess of **$3,030,299,** less the $50,000 Policy Retention, plus pre-judgment and post-judgment interest; and

b.    all such other and further relief to which NHF is justly entitled.

Alexandria, Virginia
Dated:  April 23, 2012

Respectfully submitted,

By: _____
Erika L. Morabito (Va. Bar No. 44369)
Paul R. Monsees (pro hac vice admission pending)
Brittany J. Nelson (Va. Bar No. 81734)
Foley & Lardner, LLP
3000 K Street, NW, Suite 600
Washington, DC  20007
Phone:  202-672-5300
Fax:  202-672-5399
*Attorneys for Plaintiff*
*National Heritage Foundation*